Philadelphia Mutual B. & L. Assn. *v.* Bernard Samuel B. & L. Assn., Appellant.

Argued October 31, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Paul M. Wintrob,* for appellant.

*Harry Balis,* for appellee.

Opinion by Stadtfeld, J., February 1, 1935:

This was an action brought by the plaintiff to recover taxes assessed against premises at 2454 Douglas Street, Philadelphia, for the years 1929, 1930 and 1931, which the plaintiff, as purchaser at sheriff's sale, had been required to pay, and for which it was alleged the defendant, as the owner of the real estate, was personally liable to the city; and, by right of subrogation, to the plaintiff.

The statement of claim avers that on June 10, 1924, Max Ostrum executed and delivered to the Philadelphia Mutual B. & L. Assn., plaintiff, a mortgage in the sum of $2,200, secured upon said premises; that on July 30, 1928, the Mutual Protective B. & L. Assn., subsequently merged with, and now known as Bernard Samuel B. & L. Assn., defendant, obtained title to said premises by deed from the sheriff, duly recorded; that Max Ostrum and the defendant association defaulted in the terms of the mortgage executed to plaintiff in failing to pay the taxes due on said property for the years 1929, 1930 and 1931, and also failed to pay interest on

the first mortgage held by the Industrial Trust, Title and Savings Company of the City of Philadelphia; that on February 3, 1931, judgment was entered against Max Ostrum on the bond secured by the mortgage held by plaintiff association, on account of default in the payment of taxes and interest as aforesaid, and on a writ of fi fa issued thereon, the said premises were sold on March 2, 1931, and deed made by the sheriff to plaintiff, bearing date March 16, 1931, and duly recorded; that the said premises were registered for the purpose of taxation in the office for the receiver of taxes for the City of Philadelphia, during the years 1929, 1930 and 1931 in the name of the Mutual Protective B. & L. Assn.; that plaintiff was obliged to pay to the said receiver of taxes the sum of $103.42, taxes for 1929, the sum of $91.96, taxes for 1930, and the sum of $85, taxes for 1931.

The affidavit of defense of defendant B. & L. Association averred that it obtained title as averred in plaintiff's statement, but though it took title from the sheriff on or about July 30, 1928, and held title until March 16, 1931, when it was divested of same by virtue of foreclosure proceedings instituted by plaintiff association, it did not, at any time during said period, have the beneficial interest of said property, because plaintiff association was in possession of the same during the whole of said period. It further averred that on or about July 30, 1928, an oral agreement was entered into between the plaintiff association and the defendant association whereby the defendant agreed to grant sole and exclusive right to plaintiff to collect the rents from the tenant or tenants of said property, and, in consideration thereof, plaintiff agreed that the moneys which they would receive from the rents would be applied as follows: firstly, toward the payment of taxes; secondly, the payment of first mortgage interest; and thirdly, the payment of dues, in-

terest and premiums which would become due on the second mortgage then held by plaintiff; that plaintiff further agreed, in consideration of said arrangement, to release defendant association from any and all claims for city taxes, first mortgage interest and second mortgage interest and premiums which were then or which might become due thereafter.

The matter came on for hearing before the court, apparently without a jury, and judgment entered on "finding for plaintiff, $294.65." No opinion appears to have been filed and the printed record does not disclose the findings, if any.

Abraham D. Keel, president of plaintiff association, called as for cross-examination, testified that his association collected the rents from the property from the time the leases were turned over to it, and that the same were applied to the mortgage held by plaintiff. Irwin Dubin, secretary of plaintiff association, testified that the rents were applied against the various amounts for which the property was in arrears; that they collected $35 per month from the rents, which was not enough to pay the arrearages due, and that they had no money with which to pay taxes; that the secretary of defendant association, Richard Blumenthal, came to his office every month to see that the payments were credited on the books against the various charges due, and got a full account and knew exactly what was going on, and entries were made in the latter's pass books; that every time Blumenthal came, Dubin asked him about the taxes and Blumenthal promised to pay them. The witness denied any agreement for the payment of taxes out of rents and stated that there was not sufficient rent received to pay the building and loan dues.

Richard Blumenthal, called on behalf of defendant, testified that he was a director of defendant association, that plaintiff "asked for control and then I rep-

resented the Bernard Samuel B. & L. Association and I agreed with that, with their representative who was Mr. Williams at that time, that they would rent the property, collect rents and use the rents to apply to the carrying charges of the property. . . . . . . Well the leases were not turned over, the plaintiff, a representative of the plaintiff building and loan association rented the properties.''

The record is devoid of any testimony in support of the averment in the affidavit of defense that plaintiff was to apply the rents received first to payment of taxes. In fact the testimony is to the contrary.

It was held in Integrity Trust Co. v. St. Rita B. & L. Assn., 112 Pa. Superior Ct. 343, 171 A. 283, in a very elaborate and comprehensive opinion by our Brother KELLER, that under the Acts of April 16, 1845, P. L. 495, Section 4, March 11, 1846, P. L. 114, Section 2 and March 13, 1847, P. L. 340, the primary duty to pay taxes assessed against real estate situated in the City of Philadelphia is on the real and actual owner. Where a purchaser at a sheriff's sale is required to pay taxes which the owner should have paid he is subrogated to the rights of the city and may bring an action of assumpsit for reimbursement. And in Provident Trust Co. v. Judicial B. & L. Assn., Ibid. 352, 171 A. 287, the same judge held on p. 355: ''The mortgagee in possession of the premises, and collecting the rents, by virtue of a demand for the same on condition broken, is not the real owner of the real estate with the accompanying personal liability for payment of taxes. The registered or title owner remains the real owner, until he executes and delivers a deed of conveyance, absolute on its face, as distinguished from a mortgage, or the real estate is conveyed by the sheriff under execution process.'' See also Securities Guaranty Corporation v. Pacheto Co., Inc., Ibid. 360, 171 A. 291.

In the instant case, defendant failed to establish any

agreement by plaintiff to pay the taxes in question, and in the absence of such agreement no liability was imposed on plaintiff, under the law, to pay the same unless there was money in its hands applicable to such purpose. All the rents received by plaintiff having been applied to the payment of arrears on the mortgage held by plaintiff, the court properly entered judgment against defendant for the amount of taxes paid by plaintiff assessed against the property while assessed in the name of the defendant owner.

The assignment of error is overruled and judgment affirmed.